United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON E. REYNOLDS, | No. C 09-00301 MHP |
| Plaintiff(s), | |
| v. | **MEMORANDUM & ORDER** |
| CITY & COUNTY OF SAN FRANCISCO, et al. | **Re: Defendants' motion to dismiss Counts V, VI and IX of the First Amended Complaint** |
| Defendant(s). | |

Ron E. Reynolds ("plaintiff"), an officer in the San Francisco Police Department ("SFPD"), brought this action against Inspector Sydney Laws ("Laws"), Officer Padget Mitchell ("Mitchell"), Chief of Police Heather Fong ("Fong"), and Deputy Chief James Lynch ("Lynch"), all of the SFPD, and the City and County of San Francisco (collectively "defendants"), alleging a variety of violations of state and federal law arising out of an administrative disciplinary action taken against him. Defendants' now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count V for illegal wiretapping, Cal. Penal Code § 629.86, Count VI for denial of procedural due process, 42 U.S.C. § 1983, and Count IX for illegal wiretapping/eavesdropping, 18 U.S.C. § 2520, of plaintiffs's complaint. Having considered the arguments and submissions for the parties, the court enters the following memorandum and order.

BACKGROUND

I.      Factual Background

Plaintiff has been a police officer with the SFPD for more than 24 years, 11 of which he has held the position of Inspector. Docket No. 18 (Murray Dec.), Exh. 1 (First Am. Complaint ("First Am. Compl.")) ¶ 14. Each of the individually-named defendants is a SFPD employee. *Id*. ¶¶ 3-7. On March 6, 2006, plaintiff was assigned to investigate a stalking case by his superiors in the SFPD Sexual Assault Unit. *Id*. ¶ 36. On April 7, 2006, plaintiff alleges the stalking suspect made a phone call to plaintiff at his desk. *Id*. ¶ 66. Plaintiff's desk is situated in the Sexual Assault Unit, which is a large, open room where other inspectors have desks nearby. *Id*. ¶ 68. During this phone call with the suspected stalker, plaintiff discussed the possibility of the suspect leaving the state to return to the suspect's home and suggested that the suspect seek medical attention, which plaintiff claims he was told to do by Assistant District Attorney Dennis Chow. *Id*. ¶¶ 45, 62, 66. Plaintiff alleges this conversation dealt with private police business and demonstrated his professionalism and adherence to SFPD policy. *Id*. ¶ 68.

Co-worker and defendant Laws was in the Sexual Assault Unit office during this phone call and overheard plaintiff's conversation from her desk approximately 20-25 feet away from plaintiff. *Id*. ¶ 68. Laws, who is not plaintiff's supervisor or responsible for monitoring his professional performance, claims she was concerned about the substance of plaintiff's conversation. As a result, she turned on a tape recorder to record plaintiff's side of the conversation and then temporarily left the unit. *Id*. ¶ 68. Laws did not announce she was recording the conversation or obtain permission from plaintiff to record the conversation. *Id.* ¶ 67. Laws claimed she believed plaintiff's conversation was harmful toward the victim in the stalking case. *Id.* ¶ 71. Plaintiff alleges he was not informed that his conversation had been recorded until April 16, 2007, when plaintiff was told by an internal affairs attorney that there was a written transcript of the phone call and a digital recording of the conversation stored on a computer. *Id*. ¶ 81.

In both July 2006 and January 2007, the Management Control Division of the SFPD interviewed plaintiff regarding the April 7, 2006, phone call between plaintiff and the stalking

2

suspect, and subsequently brought administrative charges against him for compromising a criminal investigation, neglect of duty, conduct unbecoming of an officer, unprofessionalism with the District Attorney's Office and revealing confidential information to and having an unprofessional relationship with the stalking suspect. *Id*. ¶ ¶ 72, 74b. Deputy Chief Lynch conducted an administrative disciplinary hearing on May 20, 2008, to address the charges. Plaintiff was represented by an attorney at the hearing. *Id*. ¶ 74a. Deputy Chief Lynch did, however, order Lieutenant Steve Johnson—a retired police officer with significant experience handling disciplinary proceedings who plaintiff's attorney had retained as an assistant/consultant—out of the hearing room. *Id.* ¶ 165. Plaintiff alleges that after the hearing, he was suspended and was "removed … from his civil service status as inspector." *Id*. ¶ 79.

II.     Procedural Background

Plaintiff filed this action on December 15, 2009, in the Superior Court for the County of San Francisco. *Id.* at 1. Defendants removed this action to this court on January 23, 2009. Docket No. 1. On August 10, 2009, defendants filed the instant motion to dismiss. Docket No. 15. The court conducted a hearing on the motion September 14, 2009. At the hearing, the court indicated that it intended to dismiss plaintiff's sixth cause of action, alleging violations of his procedural due process rights. The court then inquired if plaintiff, who filed this case in state court, would consider voluntarily dismissing the ninth cause of action under the federal wiretapping statute. Had plaintiff acceded to that request, the case would no longer present a federal question, removal to this court would be improper, and the court would remand the case to state court. Plaintiff considered the court's suggestion, and on September 18, 2009, informed the court that he would continue to pursue his federal wiretapping claims. Docket No. 21.

LEGAL STANDARD

A.     Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A

3

motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements"of a cause of action. *Iqbal*, 129 S. Ct. at 1950; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). In addition, pursuant to Federal Rule of Evidence 201, "a court may take judicial notice of 'matters of public record' " without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

DISCUSSION

Defendants move to dismiss Counts V, VI and IX of plaintiff's complaint. The court addresses the federal claims first.

I.  Count VI: Deprivation of Procedural Due Process

In his sixth cause of action, plaintiff claims that the procedures at his disciplinary hearing violated his constitutionally-protected procedural due process rights.[1] Specifically, he alleges that although he was permitted by the disciplinary hearing officer, Deputy Chief Lynch, to be

4

represented by counsel, Lynch banished from the hearing room an assistant/consultant retained by plaintiff's counsel to assist with the disciplinary hearing. First Am. Compl. ¶ 165. Plaintiff alleges that by prohibiting him from benefitting from the assistance of a consultant, defendants deprived him of "the assistance of counsel." *Id.* ¶ 166.

Count VI fails to state a claim upon which relief could be granted. The San Francisco City Charter, of which the defendants request that the court take judicial notice, provides that a uniformed police officer, like plaintiff, "shall be entitled, upon hearing, to appear personally and by counsel . . . ." Docket No. 15 (Defs.' Mot.) at 7 n.2; Docket No. 16 (Lucas Dec.), Exh. B (San Francisco Charter § A8.343). Plaintiff was allowed to appear "by counsel." Due process requires no more. Plaintiff cites no authority for the proposition that due process guarantees a civil servant the right to have his attorney's assistant be present at a post-deprivation disciplinary hearing. Accordingly, Count VI of the plaintiff's complaint is dismissed with prejudice, as the court can conceive of no cognizable legal theory under which plaintiff's allegations could state a claim for relief. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with prejudice is appropriate where "pleading[s] could not possibly be cured by the allegation of other facts").

II. <u>Count IX: Illegal Wiretapping, 18 U.S.C. §§ 2510, *et seq.*</u>

Count IX of the complaint alleges that the recording of plaintiff's telephone conversation violated the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("the Act"), codified at 18 U.S.C. § 2510 *et seq*. The Act provides that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), can be found civilly liable under 18 U.S.C. section 2520(a). Defendants claim and plaintiff contests that the intercepted communication does not meet the definition of either a "wire" or "oral" communication, and thus cannot be the basis for liability under the Act.

A. <u>Wire Communications</u>

Under the Act, a wire communication is an "aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like

5

connection between the point of origin and the point of reception . . . ." 18 U.S.C.§ 2510(1). Defendants argue that tape recording, through the air, plaintiff's side of a phone conversation does not constitute the interception of a wire communication under the Act. Plaintiff counters that he was engaged in a wire communication when his conversation was recorded by defendants and that his pleadings do not preclude the possibility that the conversation between plaintiff and the stalking suspect was intercepted as it was passing through wires because there may have been a digital recording.

A wire communication is only "intercepted" within the meaning of the statute when someone records "what was transmitted over the wire." *Siripongs v. Calderon*, 35 F.3d 1308, 1320 (9th Cir. 1994). An individual who overhears and records " 'one side of a telephone conversation by standing next to the speaker has not intercepted a wire communication merely because the person was speaking into a telephone at the time of interception.' " *Id.* (quoting *United States v. McLeod*, 493 F.2d 1186, 1188 (7th Cir. 1974)); *see also United States v. Carroll*, 332 F. Supp. 1299, 1301 (D.D.C. 1971) ("[O]verhearing and recording of one end of a telephone conversation without actual interception of a communication passing through the wires, was not intended to be included within the definition of the term 'wire communication.' ").

Plaintiff does not allege that Laws recorded "what was transmitted over the wire." Plaintiff alleges that Laws placed a tape recorder somewhere in the Sexual Assault Unit to record plaintiff's end of the conversation. Even if as plaintiff alleges this recording was later converted to digital form to store on a SFPD computer, the original recording does not constitute a wire communication under the Act. Because plaintiff does not allege that Laws recorded the communication transmitted through the wire between plaintiff and the stalking suspect, plaintiff has not alleged sufficient facts to establish that defendants' impermissibly recorded a wire communication in violation of the Act.

B. <u>Oral Communications</u>

The Act defines oral communication to include "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." 18 U.S.C. § 2510(2). "[T]he statute protects an oral

6

communication only if there is a[ reasonable] expectation that the communication will not be intercepted, i.e., 'acquired.' " *Siripongs*, 35 F.3d at 1320 (citing 18 U.S.C. § 2510(2) & (4)). Congress drafted the definition of oral communication to reflect the Supreme Court's standards for determining when a reasonable expectation of privacy exists. *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir.1993) (citing S. Rep. No. 1097, 90th Cong.2d. Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2178 ("Report"); *Katz v. United States*, 389 U.S. 347 (1967)). The court in *Katz* held that despite a subjective expectation of privacy that a plaintiff may hold, to be worthy of protection, that expectation must also be objectively reasonable. *Katz*, 389 U.S. 347 at 360-61.

Courts in this Circuit have looked to a number of factors to determine whether a reasonable person would possess an expectation of privacy in an oral conversation, including the "nature of the location where the[] conversation[] w[as] seized," *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005) (holding corporate officers of company had reasonable expectation of privacy with respect to conversations made in the small corporate office over which they exercised full access); whether the conversation could be overheard with the naked ear, *Kemp v. Block*, 607 F. Supp. 1262, 1263-64 (D. Nev. 1985); whether the conversation took place out in the open, *Siripongs*, 35 F.3d at 1320 (holding the telephone conversation conducted in the middle of a police department was not protected); and whether the conversation involved business or private matters, *see Medical Lab. Mgmt. Consultants v. Am. Broad. Co., Inc.*, 306 F.3d 806, 814 (9th Cir. 2002) (finding plaintiff's discussion of business operations and corporate-related topics rather than personal and private affairs does not create a reasonable expectation of privacy in the contents of the conversation); *see also Kee v. City of Rowlett*, 247 F.3d 206, 213-15 (5th Cir. 2001) (holding that factors to consider are: "(1) the volume of the communication or conversation; (2) the proximity or potential of other individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of the oral communications as it relates to the subjective expectations of the individuals who are communicating.").

7

Many of the factors in the instant case—including the unaided overhearing of plaintiff's conversation, the large and open community office space in which it took place and the business-related nature of its substance—favor holding that plaintiff's conversation was not protected by the Act. Although it is a close issue, such a ruling is not, however, appropriate at this stage of the litigation. In a similar case in which a police officer was recorded by means of a bug planted in his office, the Ninth Circuit held that the officer possessed a reasonable expectation of privacy in his conversation even though other people were in close proximity and the door to his office was open at the time his conversation was recorded. *United States v. McIntyre*, 582 F.2d 1221, 1224 (9th Cir. 1978). The court found that the absence of "[a]n established regulatory scheme or specific office practice" that would have alerted the plaintiff "to expect random monitoring of his conversations" in the office served as strong evidence of a reasonable expectation of privacy. *Id.* Although the court insinuated that in the context of an "internal affairs investigation," surreptitious recording of an officer's work-related conversations might be justified, such an exception does not apply to the instant case. *Id.*; *see also United States v. Taketa*, 923 F.2d 665, 673-74 (9th Cir. 1991) (holding that law enforcement officer's reasonable expectation of privacy in his office was defeated by the right of his supervisor to conduct reasonable internal investigations regarding workplace misconduct). Plaintiff alleges that defendant Laws, who recorded the conversation, was not plaintiff's supervisor and had "no duty to monitor or report on the conduct" of plaintiff. First Am. Compl. ¶ 68. Because this case falls within *McIntyre*'s protection of workplace telephone conversations, the court cannot, as a matter of law, hold that no inference of an objectively reasonable expectation of privacy can be drawn from plaintiff's complaint. Therefore, because plaintiff's complaint plausibly alleges that he possessed a subjective and objective expectation of privacy in his telephone conversation with the suspect, the defendants' motion to dismiss Count IX is denied.[2]

III.   Count V

Count V of plaintiff's complaint alleges that defendants violated his civil rights under California Penal Code section 629.50 by not obtaining a court order before recording the

8

conversation between plaintiff and the suspect. Section 629.50 requires court authorization for the interception of wire, electronic pager or cellular telephone communications. A "wire communication" is defined as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ." Cal. Penal Code § 629.51(a). An "aural transfer" is defined as "a transfer containing the human voice at any point between and including the point of origin and the point of reception." Cal. Penal Code § 629.51(d). Section 629.86 permits an individual "whose wire, electronic pager, or electronic cellular telephone communication is intercepted, disclosed, or used in violation of this chapter," to recover damages and attorneys' fees. Cal. Penal Code § 629.86.

Nowhere in his complaint does plaintiff allege that any defendants intercepted his "aural transfer" with the suspect between the point of origin and the point of reception of the conversation. As is discussed above, defendant Laws used a tape recorder to record, through the air, plaintiff's side of his conversation with the suspect. This conduct is not proscribed by the sections of the Penal Code that plaintiff alleges defendants violated.

In his opposition to defendants' motion to dismiss, plaintiff claims that defendants violated section 632 of the Penal Code, which prohibits the eavesdropping upon or recording of a "confidential communication."[3] Plaintiff may very well be able to state a claim for relief under section 637.2 of the Penal Code, which provides for a private right of action for anyone injured by a violation of section 632. Whether he can do so, however, is irrelevant to whether his complaint states a claim upon which relief can be granted under section 629.50 of the Penal Code. Because it does not, Count V of the plaintiff's complaint is dismissed. Count V is dismissed without prejudice, because, in contrast to Count VI, it is possible that plaintiff's complaint could be cured by the allegation of other facts, i.e. that defendants intercepted the telephone conversation between the point of origin and the point of reception of the conversation.

9

CONCLUSION

Defendants' motion to dismiss Count V is GRANTED without prejudice and with leave to amend as described above. An amended complaint, if any, shall be filed within thirty (30) days of the date of this order. Answers or other responses should be filed within thirty (30) days of the filing of the amended complaint.

Defendants' motion to dismiss Count VI is GRANTED with prejudice.

Defendants' motion to dismiss Count IX is DENIED.

IT IS SO ORDERED

Dated: October 30, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

10

**ENDNOTES**

1. In his sixth count, plaintiff identifies 42 U.S.C. § 1983 as the substantive foundation of his claim. In order to state a claim under section 1983, a plaintiff must allege that an individual or entity, acting under color of state law, deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Presumably, as plaintiff asserts that his procedural due process rights have been violated, his claim arises under section 1 of the Fourteenth Amendment to the United States Constitution, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

2. The court is concerned about an issue that neither of the parties addressed in their moving papers. Section 2511(1)(a) of the Act, to the extent it creates civil liability for recording intrastate oral communications in which a speaker has a reasonable expectation of privacy, comes dangerously close to overstepping the limits of Congress' power. As the Ninth Circuit has previously held, "[t]he structuring of subsection 2511(1) seems inexplicable; the interception of wire communications is prohibited in only subparagraph (a), yet, the interception of oral communications is expressly prohibited in both subparagraphs (a) and (b)." *United States v. Anaya*, 779 F.2d 532, 534 (9th Cir. 1985). "The dual proscription against the interception of oral communications and the concomitant unusual statutory structuring . . . is explained by Congress' " concern that the prohibition on the interception of intrastate oral communications, absent a "federal nexus," might be an unconstitutional exercise of its limited powers. *Id.* at 535. The Senate Report regarding the Act explained that Congress was confident that, pursuant to the Commerce Clause, it could regulate interstate and intrastate wire communications "[s]ince the facilities used to transmit wire communications form part of the interstate or foreign communications network . . . ." Report, 1968 U.S.C.C.A.N. at 2180. The Report candidly admitted, however, that the "interception of [oral] communications . . . does not necessarily interfere with the interstate or foreign communications network, and the extent of the constitutional power of Congress to prohibit such interception is less clear than in the case of interception of wire communications." *Id.* Congress believed that the oral communications provision could be grounded in the constitutionally protected right to privacy, but recognized that the application of section 2511(1)(a) "to other circumstances could in some cases lead to a constitutional challenge . . . ." *Id.* Congress suggested that a constitutional challenge could "be avoided by a clear statutory specification of an alternative constitutional basis for the prohibition." *Id.* In light of its concerns regarding section 2511(1)(a)'s affect on intrastate oral communications, Congress also included section 2511(1)(b), which proscribes the interception of oral communications in specific ways that clearly implicates interstate commerce or federal land. Congress wrote that "[t]aken together, subparagraphs (I) to (v) of subparagraph (b) create an essentially comprehensive ban on the interception of oral communications. The provisions will be applicable to the overwhelming majority of cases involving the unlawful interception of such communications, and it will be unnecessary to rely on the broader prohibition of subparagraph (a)." *Id.* at 2181.

In light of this illuminating legislative history, courts interpreting section 2511(1)(a) in criminal cases have upheld the provision, but have uniformly held that a defendant can be convicted under the statute only if there is a "federal nexus" regarding the interception of an oral communication. *See United States v. Burroughs*, 564 F.2d 1111 (4th Cir. 1977) (affirming district court's granting of defendant's motion for acquittal because the government failed to prove a "federal nexus"); *United States v. Hubbard*, 474 F. Supp. 64, 72-74 (D.D.C. 1979) (denying defendant's motion to dismiss the indictment under section 2511(1)(b) and holding that the right to privacy found in the Fourteenth Amendment provided an adequate "federal nexus"); *United States v. Perkins*, 383 F. Supp. 922, 925-27 (D. Ohio 1974) (denying motion to dismiss the indictment, but requiring that the government prove a "federal nexus"). Over the past 30 years, no court has examined the constitutionality of section 2511(1)(a) as it applies to intrastate oral communications not otherwise covered by section 2511(1)(b). Because the parties have not raised or briefed this issue, the court will not address this issue at this time. As this case proceeds, however, it may become necessary that the court squarely confront the constitutionality of section 2511(1)(a)'s creation of civil liability for those who intercept intrastate oral communications.

3.  The term "confidential communication" is defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires to be confined to the parties thereto, but excludes communications made in a public gathering or . . . or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c).