**EXHIBIT A**

# MURRAY & ASSOCIATES

ATTORNEYS AT LAW
1781 Union Street
San Francisco, California 94123
Tel: (415) 673-0555
Fax: (415) 928-4084

December 19, 2007

Labor & Workforce Development Agency
801 K Street, Suite 2101
Sacramento, CA 95814

**Certified Mail Return Receipt**
Number: 7006 3450 0000 3476 6922
Fax: 916-327-9158
Phone: 916-327-9064

Re: Request for Prosecution Under Labor Code 2699 and 2699.3 for Violation of Labor Code Section 1102.5

Dear Labor & Workforce Development Agency:

By this letter I am asking the Labor & Workforce Development Agency investigate and prosecute charges as it relates to retaliatory suspension and discipline in violation of Labor Code sections 1102.5 of my client, Police Inspector Ron Reynolds. This request is made pursuant to Labor Code Section 2699 and 2699.3 for a violation enumerated in section 2699.5, specifically a violation of Labor Code Section 1102.5.

### A. Underlying Incident

On March 5, 2006, Jennifer Abrams filed a report with the San Francisco Police Department (see # 060246335). Jennifer stated the following:

Approximately five years ago she met a male, Scott Shaeffer, at a Christmas party in her condominium complex. Schaeffer is a tenant in her condominium complex. Since that time she has seen Scott several times in and around the building. Scott's behavior towards her changed in December 2005. She noticed that he was watching and following her around the building and gym. He would be staring out his window looking into her unit on numerous occasions at all hours of the day and night. During this time she was receiving numerous hang up phone calls at home and work. She did not know who was making the calls.

On February 28, 2006, she opened the door to her condo and found Scott standing outside her door.

On March 3, 2006, she left her condominium for work and she noticed Scott loitering outside her hallway. She walked to work. When she arrived at 77 Beale she realized that Scott had followed her to work. He stood on the sidewalk staring at her.

# EXHIBIT 1

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 2

On March 5, 2006, she woke up and went to get the paper. When she opened the door someone had brought breakfast and placed it at her front door.

On March 7, 2006, someone again placed breakfast at her front door. She is very afraid that Scott will hurt or rape her. She hasn't been living at her home since these incidents. She has filed for a restraining order to keep Scott away from her.

On or about March 7, 2006, Inspector Reynolds was assigned the case by his superiors in the SFPD sex crimes unit.

On March 8, 2006, Inspector Reynolds went to 300 Third Street and met with Scott Shaeffer. Shaeffer stated to Inspector Reynolds the following:

He has known Jennifer for years.

Six months ago she started flirting with him. He is convinced that she led him on. This was done when Jennifer was eating a banana. The way she ate the banana told him she was flirting. He didn't know how to handle it. Recently he has been having some problems. He has followed her to work and does call her on the phone a lot. He has learned that she is moving and this upset him. He bought her food and brought it to her door.

He has had this problem with other women. At the end of March 2006, he had to go to Pennsylvania for a criminal harassment case. Last year he was arrested in Pennsylvania for stalking. He spent some time in jail for violating a restraining order in Pennsylvania.

On March 9, 2006, Inspector Reynolds met with Assistant District Attorney ("ADA") Dennis Chow at the San Francisco District Attorneys Office. ADA Chow is the head Assistant District Attorney prosecuting stalking cases in San Francisco. Inspector Reynolds brought all the documents and discussed Schaeffer's behavior to ADA Chow. After discussion and review with ADA Chow, Chow declined to issue a warrant in this case. ADA Chow stated that Schaeffer has not made "a creditable threat" and therefore has not met the corpus of a violation of Penal Code Section 646.9. ADA Chow stated, "We will have to wait and see what he does next." The criminal case was closed at this time on the comment, "District Attorney refuses to prosecute."

The computer reports and record checks as requested by Inspector Reynolds continued to come in on Schaeffer even after the investigation was officially on hold.

On or around March 15, 2006, Ed Kenney, the head of security for PG&E called Inspector Reynolds. Kenney said he was requesting a favor. Kenney stated he was a retired homicide

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 3

inspector from the San Francisco Police Department. He had just spoken to Jennifer Abrams and he needed a favor. Kenny requested all of Schaeffer's criminal records, CLETs reports, FBI reports, NCIC reports, police reports and photographs. Kenny was advised by Inspector Reynolds that his request was illegal and was declined by Inspector Reynolds. Kenny was also advised that what he was asking for could be considered a "conspiracy" under Penal Code Section 182, a felony. Kenny then discontinued the phone conversation.

On March 21, 2006, at 1015 hours, Jennifer Abrams called Inspector Reynolds and wanted to know the status of her case. A return phone call was made and she was informed by Inspector Reynolds that her case had been taken to the district attorney's office for review the district attorney refused to issue a warrant or proceed further in her case at this time. Jennifer Abrams became upset, was yelling at Inspector Reynolds, and demanded the phone number and name of the district attorney. She was provided with the information by Inspector Reynolds. Shortly thereafter she would also demand from Inspector Reynolds a copy of the police reports and file, none of which was provided. Inspector Reynolds explained that he would not be able to provide such documents to her as it was a crime to take then from his file and she was not authorized to possess them.

On March 21, 2006, at 1045 hours, the Newtown Township Police Department in Pennsylvania was contacted by Inspector Reynolds and police reports were requested. Dottie from the Newtown Township Police Department stated that the documents had already been sent to San Francisco Police Inspector Pete Siragusa. was immediately suspicious since there was no known reason for Inspector Siragusa to have these documents. He had not been assigned this case.

On March 21, 2006, at 1100 hours, Inspector Reynolds asked Inspector Peter Siragusa about attaining the Pennsylvania police reports. At first Inspector Siragusa denied having the report, then he produced the police reports as it related to Scott Shaeffer.

On March 21, 2006, at 1130 hours, Jennifer Abrams called ADA Chow to discuss the case. ADA Chow again told Jennifer Abrams that the corpus was incomplete and he could not file a criminal complaint. At the end of the phone call Jennifer Abrams then requested Schaeffer's DMV photograph. ADA Chow told Jennifer Abrams he couldn't comply with her requests because he didn't have it and was illegal to give out. Jennifer Abrams stated she was an attorney for PG&E and knew the law. ADA Chow told Jennifer he was an attorney also and could not comply with her request.

On March 21, 2006, at 1140 hours, ADA Chow was updated on this case by Inspector Reynolds. ADA Chow stated that there still wasn't a threat in this case and a criminal warrant could not be issued. Inspector Reynolds advised ADA Chow that Schaeffer was thinking of

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 4

moving back to Pennsylvania. ADA Chow told Inspector Reynolds to convince Schaeffer it would be in everybody's interest for him to move back to Pennsylvania.

On March 21, 2006, at 1340 hours, there was a second discussion by Inspector Reynolds with Inspector Siragusa. Inspector Siragusa was still not assigned to the Schaeffer stalking case. Reynolds asked why Inspector Siragusa had obtained these documents. Inspector Siragusa stated that he did discuss the case file and chronological of investigation report with Ed Kenny of PG&E. Siragusa stated he probably shouldn't have gotten involved in this case.

On March 21, 2006, at 1400 hours, Inspector Reynolds reported to his superior all aspects of this case with the officer in command of the Sexual Assault detail Lt. Molly Pengel. Lt. Pengel was advised that

There was information on this case and possible documents were given to a retired police officer working as a security officer for a private corporation. Inspector Reynolds pointed out that these were blatant violations of law by Inspector Siragusa and possibly compromised the police investigation. Lt. Pengel responded in a hostile, bitter and derogatory voice, "So what do you want me to do."

Inspector Reynolds stated that she was the unit commander and it was her job to enforce the rules. Inspector Reynolds gave Lt. Pengel a copy of his chronological investigation documenting these events and had her sign the document to prove he reported the violations. From that point on, Lt. Pengel was cold distant and on occasions condescending towards Inspector Reynolds.

From March 21, 2006 until April 4, 2006, the investigation continued and new victims were found. Schaeffer was back in Pennsylvania appearing in a criminal violation of a restraining order violation hearing. Officer Kelly Dunn of the San Francisco Police Psych Liaison Unit was contacted by Inspector Reynolds. Dunn was to arrange for mental health workers to contact Schaeffer for a mental assessment.

On April 6, 2006, Officer Dunn and mental health workers met with Schaeffer and conducted a mental health evaluation. They determined that Schaeffer was mentally ill as he was not in touch with reality. Officer Dunn informed Inspector Reynolds that Schaeffer was not a danger to himself or others and could not be hospitalized. Officer Dunn also informed Inspector Reynolds that Schaeffer was very upset. Officer Dunn explained that he had been told by Schaeffer that when Schaeffer arrived home from Pennsylvania he learned that Jennifer Abrams had obtained information and documents about his prior criminal activity. Officer Dunn explained that these documents were from Inspector Reynolds's file. Schaeffer told Officer Kelly Dunn that Inspector Reynolds had given the documents and information to

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 5

Jennifer Abrams. No such permission nor publication of materials in Inspector Police's file had occurred.

On April 7, 2006, at 0845 hours, Schaeffer called the San Francisco Police Department Sexual Assault Detail and spoke to Inspector Ron Reynolds. Schaeffer was upset and felt that the mental health assessment did not go well. Schaeffer was also upset that criminal history and information which originated in Inspector's file was used against him at his homeowner's association meeting. Schaeffer complained that Jennifer Abrams had Schaeffer's criminal history and information and was trying to use that information to get him evicted from his condo complex. Schaeffer accused Inspector Reynolds of giving that information to Jennifer Abrams. Schaeffer was depressed and felt his plans to sell his condo and move back to Pennsylvania were in danger because of the threat of a warrant being issued in the Jennifer Abrams case. Inspector Reynolds spent time with Schaeffer to convince him his best course of action was to return to Pennsylvania so he could receive mental health services and have family support for his mental illness.

On April 7, 2006, the phone call between and Schaeffer and Inspector Reynolds had Inspector Reynolds at his desk in the sexual assault detail. It was a private conversation. It was done as he was instructed by the ADA. In part, he sought to have Schaeffer seek medical attention and return to his state of origin.

Unbeknownst to either Schaeffer or Inspector Reynolds, the phone conversation was being secretly tape recorded by SFPD Inspector Sidney Laws. Inspector Laws stated she was listening to the conversation between Inspector Reynolds and Schaeffer at her desk approximately 20 to 25 feet away. Inspector Laws stated she was concerned by what Inspector Reynolds was saying on the phone to Schaeffer. (Inspector Laws is not Reynolds's supervisor, nor works for Management Control, nor has any duty to monitor or report on the conduct of Inspector Reynolds, especially since Reynolds was in fact carrying out a lawful duty. [*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 439, 131 Cal.Rptr. 14, 551 P.2d 334 ["Although the intended victim as a precondition to liability need not be specifically named, he must be 'readily identifiable'..."] Here, not only was the victim known, but also the suspect and the suspect's history. The failure of Inspector Reynolds to attempt to lessen the potential harm is not only contrary to the expressed mission of the SFPD, but it also conflict with the rights and immunities given to the police and psychiatrists to warn and take some form of action. *Tarasoff*. A review of the tape will demonstrate that Reynolds acted professionally and within the bounds of the mission statement of the SFPD. [1] The basis for the imposition of

---

[1] San Francisco Police Department Mission Statement: "ATTENTION TO DUTY. The basic mission of the San Francisco Police Department and its officers is to protect life and property, **preserve the peace, prevent crime,** enforce criminal laws and ordinances, and regulate non-criminal conduct as

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 6

punishment was a pretext for retaliation and discrimination on the basis of orientation and gender.

Later, it would be discovered that Inspector Laws had another reason to secretly record Inspector Reynolds. She, and other Lesbians in the unit, had a plan to get rid of Reynolds. When he was forced out, she admitted to at least one friend that it was, "One down and one more to go," and then they would have the unit to themselves, that is to the lesbian officers alone.

## B. Violation of Law and Department Regulations

On April 7, 2007, Inspector Laws stated that what Inspector Reynolds was saying to Schaeffer was, "Harmful towards the victim." [Nothing could be further from the truth.] According to what Inspector Laws stated at that time, she attempted to justify the surreptitious recording by stating that she felt she would not be believed so she activated an electronic recording device (tape recorder) to record the conversation. This device eavesdropped on Inspector Reynolds confidential telephone conversation with Schaeffer. Inspector Laws did not announce that she was tape recording the conversation nor did she obtain consent from any of the parties having the conversation. Inspector Laws stated once she activated the tape recorder she left the office. According to Inspector Laws when she returned to the sex crimes detail the tape recorder had finished (30 minutes) and Inspector Reynolds was still on the phone with the Schaeffer. Knowing full well that it was a felony under both California law and federal law to record such a conversation unless all parties to the conversation gave their consent, on April 10, 2006, Inspector Laws gave the tape to Lt. Pengel of the sexual assault detail. Lt. Pengel then took the tape and wrote a memorandum regarding the contents of the tape, ignoring the law and instead carrying out the desire to rid themselves of Reynolds.

## C. Harm For Reporting Violation of Law

On May 19, 2006, Inspector Reynolds was brought up on administrative charges for compromising a criminal investigation. This complaint was based on the contents of the illegal tape recording of the phone conversation by Inspector Laws, approved and passed on by Lt. Pengel. Prior to May 19, 2006, Inspector Reynolds was unaware that his phone conversation had been surreptitiously tape recorded.

---

provided by law. While on duty, officers shall devote their entire time to the achievement of this mission within the context of their respective assignments." (emphasis added)

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 7

On April 16, 2007, Inspector Reynolds received discovery regarding the administrative charges. At no time prior to April 16, 2007, did Inspector Reynolds ever receive a copy of the audio tape which constituted the alleged basis for the administrative charges.

He discovered that his phone conversation with Schaeffer had been secretly tape recorded by Inspector Laws. There was a written transcript of the phone call. The actual tape was not provided. Inspector Reynolds requested a copy of the tape from internal affairs.[2] He was advised that the recording was a digital and had to be down loaded from a computer. Receiving the tape would take sometime. In reviewing the written transcripts of the recorded phone conversation discrepancies were found in Inspector Law's internal affairs statement: Inspector Laws stated that she used a tape recorder and a 30 minute tape was used. The internal affairs lawyer stated the conversation was digital and had to be copied from a computer. Inspector Laws stated that once she activated the tape recorder she left the sexual assault detail. When she returned the tape recorder had stopped and Inspector Reynolds was still one the phone. The transcript clearly shows that Inspector Reynolds completed his conversation with Schaeffer in less than 30 minutes and was having a conversation with a co worker when the recording ended.

California Penal code section 632(a) states:

"[E]very person who, intentionally and without the consent of all parties to a confidential communication , by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on along the parties in the presence on one another or by means of a telegraph, telephone, or other device  except a radio, shall be punished by fine or imprisonment in the county jail not exceeding one year or one year in a state prison or by both fine and imprisonment."

At all times, Inspector Reynolds had a reasonable expectation of privacy in his phone call and in this particular phone call by order of the Chief of Police of the SFPD. The San Francisco Police Department General Order Manual 2.01 Rules 56 states:

"SURREPTITIOUS RECORDINGS. Unless conducting an assigned criminal or administrative investigation, no member shall surreptitiously record (video or audio) any other member who is on-duty without the express written approval of the Chief of Police."

In further support of the claim of pretext, in this instance, no permission was ever given by

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 8

the Chief of Police. And the very unit charged with enforcing the rules of the SFPD, including its general orders, the criminal laws of the State of California as well as Federal criminal laws for member of the SFPD, "Management Control," was the very unit relying on evidence gathered in violation of those laws.

While Inspector Reynolds stands charged with claims of wrongdoing which lack any semblance of merit absent is the lack of administrative or criminal investigations (a) regarding Inspector Pete Siragusa disseminating criminal history and information and disseminating DMV and DOJ records to non police personnel for civil procedures, notably a felony, and (b) regarding Inspector Laws for having illegally and secretly recorded the phone call, both a California felony and a federal felony.

### More Recent Injuries, Threats, and Harassment

Having been the victim of at least two felonies, Inspector Reynolds sought to report the conduct to the police, his own department.

On September 5, 2007, Inspector Reynolds spoke to SFPD Attorney Bill Coggin, asking the proper procedure for filing a police report regarding being the victim of a crime by a member of the San Francisco Police Department. Rather than assure Inspector Reynolds that he could do so without reprisal, in violation of Labor Code Section 1102.5 SFPD Attorney Coggin restricted the making of the report such that he stated it should not be made at the station level but by Management Control Division or SID. Coggin also warned Inspector Reynolds that if he made the report of criminal conduct about another member of the SFPD, "things could get tough for [Reynolds]."

On September 6, 2007, with his wife's blessing, Inspector Reynolds decided to proceed with the making of the police report.

As he was instructed to do by SFPD Attorney Coggin, on September 7, 2007, at 1315 hrs., Inspector Reynolds called Lt. Hogue, the Commander of Management Control. Inspector Reynolds advised her that he had a pending case at MCD. He told her that when he received discovery from his active case he discovered that an Inspector surreptitiously tape recorded his phone conversation without his consent. Inspector Reynolds told Lt. Hogue that this is a felony, and that he was the victim of a violation of Penal Code Section 631(a). Inspector Reynolds told Lt. Hogue he wanted to file a police report against this Inspector, Inspector Laws. Inspector Reynolds told Lieutenant Hogue that he didn't want to violate any department orders or department policy when making this report. Inspector Reynolds told Lt. Hogue that he didn't want to go to a District Station to file the report because that was his

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 9

instructions and the information would be all over the department. Lt. Hogue agreed and stated, "No we don't want to do that." Inspector Reynolds also advised Lt. Hogue that the report might be needed for the Attorney General's Office. Lt. Hogue stated she needed to give this some thought. She would look into it and get back to Inspector Reynolds. They finished the phone call.

Approximately five (5) minutes later Lt Hogue called Inspector Reynolds back on his department phone and stated she spoke to her attorney and they couldn't advise him on what to do. Inspector Reynolds told her he wanted to file a police report and complaint. Lt. Hogue stated that she declined to accept the police report and said that this, "Is between you and your attorney." She then ended the phone conversation. Based on the orders and refusal to accept the police report of criminal conduct, numerous violations of the General Orders have occurred and no one is willing to take the report of crimes having been committed. All that seems to occur is refusals to accept the report and limitations on where he may complaint. (This in an of itself may be a violation of Labor Code Section 1102.5 (a)) The refusal to accept a written report is in and of itself a violation of SFPD General Orders 2.01 Rule A 25 which states:

> "ON-DUTY REPORTING. While on duty, members shall make all required written reports of crimes or incidents requiring police attention."

## Retaliation By The Employer's Agent for Reporting Violations of Law

While the SFPD seems to act as though they can do what they want, when they want, in fact, strict statutes compel that Inspector Reynolds not be the subject of Retaliation by his superiors, including Lt. Pengel or any other superior, for having reported a violation of law, nor having violated the law himself. California Labor Code Section 1102.5 states:

> (a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

> (b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

# MURRAY & ASSOCIATES

Labor & Workforce Development Agency
Re: *Request for Prosecution of the San Francisco Police Department*
December 19, 2007
Page 10

> (c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.
>
> (d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.
>
> (e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

I request that you prosecute the City and County of San Francisco pursuant to the provisions of Labor Code Section 2699 and 2699.3.

Thank you.


Lawrence D. Murray
Attorney for Plaintiff

cc:   City Attorney, 1390 Market Street, San Francisco 94102
      via US Mail, Certified, Return Receipt Requested No: 7005 ???????

**EXHIBIT B**

Original

# **EMPLOYMENT**

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH# _____

E200708 A-0630-00-rc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Ronald E. Reynolds    c/o Murray & Associates 1781 Union St, San Francisco CA 94123

ADDRESS                            TELEPHONE NUMBER (Include Area Code)
1176 Lea Dr.                       415/673-0555

CITY/STATE/ZIP                     COUNTY          COUNTY CODE
Novato, California, 94945          Marin

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME                                                          TELEPHONE NUMBER (Include Area Code)
City of San Francisco, SF Police Department, Lt. Molly Pengal  415/ 553-0123

ADDRESS                            DFEH USE ONLY
850 Bryant Street

CITY/STATE/ZIP                     COUNTY           COUNTY CODE
San Francisco, California 94103    San Francisco

NO. OF EMPLOYEES/MEMBERS (if known)   DATE MOST RECENT OR CONTINUING DISCRIMINATION   RESPONDENT CODE
2000                                  TOOK PLACE (month, day, and year CONTINUING TO PRESENT

THE PARTICULARS ARE:

On April 4, 2007, I was
(date of harm)

- __ fired
- __ laid off
- XX demoted
- __ harassed
- __ forced to quit
- xx denied employment
- __ denied promotion
- XX denied transfer
- __ denied accommodation
- xx other (specify) suspended from employment with SFPD
- __ denied family or medical leave
- __ denied pregnancy leave
- __ denied equal pay
- __ denied right to wear pants

by Chief Heather Fong, Chief of Police of the SFPD
Name of Person                          Job Title (supervisor/manager/personnel director/etc.)

because of my:
- XX sex
- __ age
- __ family
- __ religion
- __ race/color
- __ national origin/ancestry
- __ marital status
- __ association
- __ physical disability
- __ mental disability
- __ medical condition
- XX other (specify) gender orientation
- xx (Circle one) filing; protesting; participating in investigation (retaliation for)

the reason given Internal Affairs Lt. Pengal, Lt. Lynette Hogue, Off. Paget Mitchell, Robin Mathews

was because of     (a) [gender/ orientation] investigate & suspended Claimant due to gender & orientation
[please state      (12940 (a)), (b) [retaliation] for complaints of gender/ orientation favoritism, then brought
what you believe   up on charges and suspended harming reputation and career retaliating for complaints

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure", or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of Complainant Elected Court Action".

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated December 14, 2007

At San Francisco, California
City

COMPLAINANT'S SIGNATURE

DATE FILED: December 17, 2007

DFEH-300-03 (4/97)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

RECEIVED BY SAN FRANCISCO DISTRICT OFFICE

*PLA002068*